IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| BERNIECE EVANS,<br><br>           Plaintiff,<br><br>vs.<br><br>MOSAIC, KARLY ELBRACHT, TYLER ANDERSON, and DANIEL JONES,<br><br>           Defendants. | 8:20CV153<br><br>**MEMORANDUM<br>AND ORDER** |

      After the court's initial review of Plaintiff's Complaint (Filing 7), the court granted Plaintiff leave to file an amended complaint, including a copy of any right-to-sue noticed received from the NEOC/EEOC in order to determine whether Plaintiff timely filed her racial discrimination and retaliation claims under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq*. ("Title VII"), and the Nebraska Fair Employment Practice Act, Neb. Rev. Stat. §§ 48-1101 to 48-1125 (Westlaw 2020) ("NFEPA").[1] The court also instructed Plaintiff that her Complaint did not comply with Federal Rule of Civil Procedure 8, which requires that every complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief" and that "[e]ach allegation . . . be simple, concise, and direct." Fed. R. Civ. P. 8(a)(2), (d)(1). The court cautioned Plaintiff that all allegations in her first Complaint and any new allegations must be contained in one document, and that such amended complaint would "supersede, not supplement, her prior pleadings." (Filing 7 at CM/ECF p. 5.)

---

[1] Because "[t]he Nebraska legislature patterned the NFEPA after Title VII, and Nebraska courts consider federal court decisions when construing its language," Title VII and NFEPA claims can be analyzed together. *Davis v. Ricketts*, 765 F.3d 823, 827 (8th Cir. 2014).

Plaintiff has filed an Amended Complaint, so the court will conduct an initial review of Plaintiff's claims to determine whether summary dismissal is appropriate under 28 U.S.C. § 1915(e)(2).[2]

## I. SUMMARY OF COMPLAINT

Plaintiff, who is black, alleges that she has been the victim of "systematic harassment, segregation, and discrimination" based on race at her place of employment, Defendant Mosaic, which is a care facility for people with intellectual disabilities. (Filing 8 at CM/ECF pp. 1, 5.) As examples, Plaintiff alleges the following:

A. Plaintiff's supervisor, lead nurse Karly Elbracht, said at a client meeting that included the client's family, "I am the slave driver around here." Elbracht is responsible for bringing to Mosaic a "racist . . . atmosphere." (*Id.* at pp. 2, 11.)

B. Elbracht altered the menu available to employees by adding food Plaintiff did not like and by removing food Plaintiff preferred. (*Id.* at pp. 2-3.)

C. Tyler Anderson alerted Elbracht of complaints against her raised in investigations. Contrary to the Mosaic handbook, Elbracht was not suspended until completion of the investigation regarding her "slave driver" remark, unlike a black nurse who was suspended during an investigation after a remark she made. (*Id.* at p. 3.) Also contrary to Mosaic procedure requiring interviews of all parties who were working on the day of an event being investigated, Plaintiff was never questioned about Elbracht's "slave driver" remark, but Mosaic falsely claimed to the EEOC that it had interviewed Plaintiff. (*Id.* at p. 4.)

---

[2] I only consider the allegations in Plaintiff's Amended Complaint because, as I previously ordered, the Amended Complaint supersedes, not supplements, her original Complaint. (Filing 7 at CM/ECF p. 5.)

D. Manager Daniel Jones questioned Plaintiff and another black nurse about why a client was located in the front area wrapped in only a sheet when a white nurse was also involved in the situation, and it was the white nurse who had brought the client to the front area. Jones also reported Plaintiff to human resources for threatening the company when Plaintiff said the company was "gonna go down" and would "not continue to flourish" because of how Mosaic treated people. (*Id.* at pp. 5-7.)

E. Plaintiff was treated for general anxiety disorder and major depressive disorder as a result of "experiencing discrimination from her employer, Mosaic." (*Id.* at p. 8; Filing 11.)

F. Letters from Mosaic employees attached to the Amended Complaint[3] indicate that Karly Elbracht spoke to and assisted white employees only; after Plaintiff complained about Elbracht to human resources, Elbracht wrote Plaintiff up for actions that "other people didn't get wrote up for doing the same thing" (*Id.* at p. 19); Elbracht instructed Plaintiff to perform actions that caused her to get written up and then denied that she gave such instructions; Plaintiff did not receive write-ups before Elbracht started working at Mosaic; and Elbracht tried "everything she [could] do . . . to get [Plaintiff] fired" (*Id.* at p. 21).

G. Plaintiff indicated to the NEOC on October 10, 2018, that her performance at that time was satisfactory. (*Id.* at p. 13.)

---

[3] *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986) ("materials attached to the complaint as exhibits may be considered in construing the sufficiency of the complaint").

## II. APPLICABLE LEGAL STANDARDS ON INITIAL REVIEW

The court is required to review in forma pauperis complaints to determine whether summary dismissal is appropriate. *See* 28 U.S.C. § 1915(e). The court must dismiss a complaint or any portion of it that states a frivolous or malicious claim, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B).

Pro se plaintiffs must set forth enough factual allegations to "nudge[] their claims across the line from conceivable to plausible," or "their complaint must be dismissed." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569-70 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). "A pro se complaint must be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties." *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 849 (8th Cir. 2014) (internal quotation marks and citations omitted).

Very liberally construing the Complaint, Plaintiff here apparently seeks to assert claims for employment discrimination, retaliation, and harassment. A plaintiff need not plead facts sufficient to establish a prima facie case of employment discrimination in his or her complaint. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511-12 (2002) (holding a complaint in employment discrimination lawsuit need not contain "facts establishing a prima facie case," but must contain sufficient facts to state a claim to relief that is plausible on its face), *abrogated in part on other grounds by Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). However, the elements of a prima facie case are relevant to a plausibility determination. *See Rodriguez-Reyes v. Molina-Rodriguez*, 711 F.3d 49, 54 (1st Cir. 2013) (stating elements of a prima facie case are "part of the background against which a plausibility determination should be made" and "may be used as a prism to shed light upon the plausibility of the claim"); *see also Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012) ("While the 12(b)(6) standard does not require that

4

Plaintiff establish a prima facie case in her complaint, the elements of each alleged cause of action help to determine whether Plaintiff has set forth a plausible claim.").

## III. DISCUSSION

### A. Timeliness

Plaintiff has attached to her Amended Complaint a right-to-sue notice from the U.S. Equal Employment Opportunity Commission dated March 10, 2020. (Filing 8 at CM/ECF p. 9.) The charging party has 90 days from the receipt of the right-to-sue notice to file a civil complaint based on her charge. 42 U.S.C. § 2000e-5(f)(1) (Title VII); Neb. Rev. Stat. § 48-1120.01 (NFEPA); *see also Fort Bend Cty., Texas v. Davis*, 139 S. Ct. 1843, 1847 (2019) (describing procedure). Here, Plaintiff met that deadline, as she filed her lawsuit on April 23, 2020. (Filing 1.)

### B. Racial Discrimination

Title VII makes it unlawful for an employer "to . . . discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Plaintiff alleges she was discriminated against based on her race. Discrimination "because of" one's race "occurs when [race] is 'a motivating factor for any employment practice, even though other factors also motivated the practice.'" *Tyler v. Univ. of Arkansas Bd. of Trustees,* 628 F.3d 980, 990 (8th Cir. 2011) (quoting 42 U.S.C. § 2000e-2(m)).

The court looks to the elements of a prima facie case of discrimination in assessing whether Plaintiff has pled enough facts to make entitlement to relief plausible. To state a prima facie claim of race or color discrimination, Plaintiff must allege facts showing that (1) she is a member of a protected class; (2) she met her employer's legitimate expectations; (3) she suffered an adverse employment action;

5

and (4) the circumstances give rise to an inference of discrimination. *Pye v. Nu Aire, Inc.*, 641 F.3d 1011, 1019 (8th Cir. 2011); *see also Tyler*, 628 F.3d at 990.

As to the third element,

> [a]n adverse employment action is defined as a tangible change in working conditions that produces a material employment disadvantage, including but not limited to, termination, cuts in pay or benefits, and changes that affect an employee's future career prospects, as well as circumstances amounting to a constructive discharge. However, minor changes in duties or working conditions, even unpalatable or unwelcome ones, which cause no materially significant disadvantage, do not rise to the level of an adverse employment action.

*Jackman v. Fifth Jud. Dist. Dep't of Corr. Servs.*, 728 F.3d 800, 804 (8th Cir. 2013) (internal citation omitted) (plaintiff failed to show adverse employment action when she suffered no termination, cut in pay or benefits, or changed job duties or responsibilities).

As to the fourth element, "[t]he required prima facie showing is a flexible evidentiary standard, and a plaintiff can satisfy the fourth part of the prima facie case in a variety of ways, such as by showing more-favorable treatment of similarly situated employees who are not in the protected class, or biased comments by a decisionmaker." *Pye*, 641 F.3d at 1019 (internal quotation marks and citations omitted).

Here, Plaintiff has not alleged that she suffered an adverse employment action. While the atmosphere at Mosaic is alleged to have been toxic due to Elbracht's treatment of Plaintiff, Plaintiff does not allege that she suffered termination or constructive discharge, a cut in pay or benefits, or was forced to change job duties that constituted a materially significant disadvantage. The only adverse actions Plaintiff mentions are menu adjustments that Plaintiff did not prefer and write-ups that did not appear to result in any sort of demotion. This comes nowhere close to suffering an adverse employment action. The court will give Plaintiff one more

opportunity to file an amended complaint to sufficiently allege a racial discrimination claim.

## C. Retaliation

Title VII prohibits retaliation against an employee "because [s]he has opposed any practice made an unlawful employment practice by [Title VII], or because [s]he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e-3(a). To establish a prima facie case of retaliation under Title VII, a plaintiff must show "(1) that he or she engaged in statutorily protected activity; (2) an adverse employment action was taken against him or her; and (3) a causal connection exists between the two events." *Blackwell v. Alliant Techsystems, Inc.*, 822 F.3d 431, 436 (8th Cir. 2016) (internal quotation omitted).

The first element can be shown by opposing an act of discrimination that Title VII makes unlawful or by participating in an investigation under Title VII. *Lopez v. Whirlpool Corp.*, 989 F.3d 656, 664 (8th Cir. 2021). "When an employee communicates to her employer a belief that the employer has engaged in . . . a form of employment discrimination," as is the case here, "that communication virtually always constitutes" protected activity. *Crawford v. Metro. Gov't of Nashville & Davidson Cty., Tenn.*, 555 U.S. 271, 276 (2009) (internal quotation marks and citation omitted).

However, as with Plaintiff's discrimination claim discussed above, Plaintiff has failed to allege that a materially adverse action was taken against her as a result of her complaints to human resources. "In the retaliation context, a materially adverse action is one that might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Jackman*, 728 F.3d at 804-05 (internal quotation marks and citation omitted). Simply being the subject of write-ups with no further consequence does not meet that standard. *See Tademe v. Saint Cloud State Univ.*, 328 F.3d 982, 992 (8th Cir. 2003) (employer's act of "papering" file with

false allegations of unprofessional conduct was not adverse because no actions were taken because of the accusations).

The court will give Plaintiff one more opportunity to file an amended complaint to sufficiently allege a retaliation claim based on race.

**D. Harassment Based on Race**

It appears that Plaintiff is also asserting a claim for hostile work environment harassment based upon her race. "Hostile work environment harassment occurs [w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Jackman*, 728 F.3d at 805 (internal quotation marks and citation omitted). To succeed on such a claim under Title VII, Plaintiff must establish that "(1) [s]he is a member of a protected class; (2) unwelcome harassment occurred; (3) there is a causal nexus between the harassment and [her] protected-group status; (4) the harassment affected a term, condition, or privilege of [her] employment; and (5) [the employer] knew or should have known of the harassment and failed to take prompt and effective remedial action." *Id*. at 805-06 (internal quotation marks and citation omitted).

"The standard for demonstrating a hostile work environment under Title VII is demanding, and does not prohibit all verbal or physical harassment and it is not a general civility code for the American workplace." *Id*. at 806 (internal quotation marks and citation omitted). "[I]n in order to find that the harassment affected a term, condition or privilege of employment, [the plaintiff] must be able to establish that the conduct was extreme, such that intimidation and ridicule permeated the workplace." *Id*.

Here, Plaintiff gives as examples of racial harassment Elbracht's slave-driver remark; a black employee being treated differently than a white employee during an investigation; two black employees being singled out for questioning about a work

situation that also involved, and was instigated by, a white employee; the white head nurse (Elbracht) spoke to and assisted white employees only; Plaintiff was written up for activities that other employees performed with no consequences; and Elbracht tried to get Plaintiff fired. Eighth Circuit cases indicate that more severe and pervasive conduct is required than that alleged in this case. *See Bainbridge v. Loffredo Gardens, Inc.*, 378 F.3d 756, 759 (8th Cir. 2004) (finding racial remarks made directly to plaintiff once a month for two years by owner and operators was insufficient to render workplace objectively hostile); *Ottman v. City of Independence*, 341 F.3d 751, 760 (8th Cir. 2003) (reversing denial of summary judgment and "conclud[ing] the district court erred in finding a triable issue for the jury" where a coworker made sexist and belittling comments to, about, and around plaintiff "on a weekly, if not daily, basis"); *Scusa v. Nestle USA Co.,* 181 F.3d 958, 967 (8th Cir. 1999) (nine incidents of unpleasant conduct and offensive comments, considered "either individually or collectively," were not "severe or pervasive enough so as to alter a term, condition, or privilege of [ ] employment."); *Ways v. City of Lincoln*, 871 F.2d 750, 754-55 (8th Cir. 1989) (upholding finding of hostile work environment where plaintiff identified approximately 50 examples of racial harassment).

The court will give Plaintiff one more opportunity to file an amended complaint to sufficiently allege a racial harassment claim.

### E. Proper Defendants

Because "Title VII addresses the conduct of employers only and does not impose liability on co-workers," *Powell v. Yellow Book USA, Inc.*, 445 F.3d 1074, 1079 (8th Cir. 2006), and because Title VII "does not provide for an action against an individual supervisor," *Van Horn v. Best Buy Stores, L.P.*, 526 F.3d 1144, 1147 (8th Cir. 2008), Plaintiff's claims against individual Defendants Elbracht, Anderson, and Jones will be dismissed.

9

### F. Motions for Discovery and to Compel

Plaintiff has filed Motions for Discovery (Filing 9) and to Compel (Filing 10). Before this case is permitted to progress—including engaging in discovery—the court is required to complete reviewing Plaintiff's Complaints to determine whether summary dismissal is appropriate. Because Plaintiff's requests are premature, they will be denied without prejudice to reassertion at the proper time. 28 U.S.C. § 1915(e)(2)(B).

### IV. CONCLUSION

Plaintiff's Amended Complaint fails to state a racial discrimination, retaliation, or harassment claim on which relief can be granted. However, on its own motion, the court will grant Plaintiff one last opportunity to file an amended complaint to state such claims. Because Title VII addresses the conduct of employers only, Plaintiff's claims against individual Defendants Elbracht, Anderson, and Jones will be dismissed.

IT IS ORDERED:

1. Defendants Elbracht, Anderson, and Jones are dismissed as improper Defendants under Title VII.

2. Plaintiff shall have 30 days from the date of this Memorandum and Order to file a second amended complaint that sets forth a viable claim against the Defendant. If Plaintiff fails to file an amended complaint, or the court finds that the second amended complaint is insufficient, this matter will be dismissed without further notice for failure to state a claim upon which relief may be granted.

3. In the event Plaintiff files a second amended complaint, Plaintiff must set forth all of Plaintiff's allegations and claims from her prior Complaint and Amended Complaint into **ONE** second amended complaint. The allegations in

Plaintiff's Complaint and Amended Complaint **may not** be incorporated by reference. Failure to consolidate all claims **into one document** may result in the abandonment of claims. Plaintiff is warned that her second amended complaint will supersede, not supplement, her prior pleadings.

4.      The court reserves the right to conduct further review of Plaintiff's claims pursuant to 28 U.S.C. § 1915(e) in the event she files a second amended complaint.

5.      The Clerk of the Court is directed to set the following pro se case management deadline: June 4, 2021—second amended complaint due.

6.      Plaintiff's Motion for Discovery (Filing 9) and Motion to Compel (Filing 10) are denied without prejudice to reassertion.

DATED this 6th day of May, 2021.

> BY THE COURT:
>
> *Richard G. Kopf*
> Richard G. Kopf
> Senior United States District Judge